Please step forward and state your name and spell your last name for us please. Good afternoon, my name is Peter King, K-I-N-G, and I represent the Eppley J.P. Mortgage Estate. Good afternoon, my name is David Warchuk, and I represent the estate. My last name is spelled L-E-W-A-R-C-H-I-K, the estate being the appellant in this matter. Okay, so each will have 20 minutes, you don't have to use it all. Do you want to reserve part of your argument? I probably will, I was intending the argument to only be allowed 10 minutes. Okay, great. Now, that microphone does not amplify, so you have to speak up, it just records. All right, thank you. We'll let you know when it's ready. Yeah, don't worry about the time, I'll take care of that. Okay, I'd still like to know how long I'm gone. Okay, all right. May it please the court. Good afternoon. This case is about the interpretation of a legal instrument that has been brought before you because of the dismissal of a partition action, because of the court's ruling that the state had no standing. That interpretation was based on an interpretation of the language of a trust transference between three parties. We have Elizabeth Jezuski, I'm sorry, Anelia Jezuski, Elizabeth Jaworski, and Casey Jaworski. And for the rest of the oral argument, I will be referring to them by their first names. It's always good when writing an opinion or a brief to know what your standard overview is. It's like a North Star is to a sailor, it's what it should be to a court or a lawyer. I typically don't bring it up in oral argument, but in the current case there seems to be some confusion, or at least there seems to be some sort of disagreement rather. Of course, the state takes the position that this is a dismissal of an action pursuant to a 2619 in the code, which is review de novo. The Supreme Court precedent for that would be O'Rentry Homes v. Village. In the response brief, the appellant, Pelley rather, takes the position that because the oral arguments were not present in the transcripts, that the appellee in this instance would be given the presumption that the court acted in conformance with the law. In the case of O'Rentry Homes v. Village, the appellant, Pelley, takes the position that the court acted in conformance with the law. However, all of the cases that he cited are in the context of sufficiency of the evidence when that is at issue. There is no sufficiency of the evidence here. It's purely a legal argument, an interpretation of a legal instrument. The transference of a property. Therefore, the issue remains de novo. But in the trial court, you had the affidavit of Elizabeth, right? You presented that? We did. It's in the record as well. Okay. And there's also... But it's your position that the document is unambiguous anyway, isn't it? It is. But alternatively, if it is ambiguous, then I would suggest the plural evidence supports the conclusion that the estate does have standing in this instance, not just because of the affidavit, but primarily because of an agreement executed between the parties soon after the deed here was transferred, indicating that upon a sale, Amelia was going to get a set sum, $180,000 for the sale of the property, and her daughter and son-in-law were going to get the remainder. It supports the position that there were two separate interests here, two separate ownership interests. And then we don't have to belabor the... Couldn't you have two separate ownership interests with a tenancy in common amongst the three of them? Well, our position would be that they would have separate ownership interests, that being Casey and Elizabeth owning 50% of the property that was deeded to them and Elizabeth owning 50% of the property that they had. So, however, the relationship between the two would not be a joint tenant situation because of the unity of interest here is not present. Two of them have 25% interest. One of them has 50% interest. The appellant is stating that the unity of interest no longer applies. I stated a case in our brief, Gayton v. Provano. That's a First District 2006 case where it says, indeed, that the unity of interest apply in severance of any of the four. So you're representing Elizabeth? I'm representing the estate.  Okay. So your contention is that this deed that gave an interest in the decedent and a joint tenancy interest in her daughter and son-in-law. I'm sorry. Could you repeat the question? I didn't hear the first part. I apologize. So is your position that the interest of the decedent at the time the deed was executed was that of a tenant in common with the other two or that she owned half of it as an undivided one-half interest in herself and the other two had the other half of the property as joint tenants between themselves? What's your position? The other two had a joint tenancy relationship between the two of them and Elizabeth did not have a joint tenancy relationship with them at the time of death. Right. Between the three of them, the whole property was held as a tenancy in common? Correct. That's the estate's position? Correct. So that when she died, the decedent died, her interest as a tenant in common transferred to the estate, right? Correct. Okay. And that the beneficiaries of the estate would succeed to her interest? That's right. Okay. And the trial court or the estate takes the position that the – I'm sorry, the case takes the position that the estate survivorship interest ended upon the death of Elizabeth. Because they consider the deed to have created a joint tenancy between all three of them? Correct. All three of them had the right of survivorship? Correct. We do not. In fact, the only way – I need you to back up a second. I'm sorry. I want to come back to Justice Griffin's question, actually. Justice Griffin asked you whether or not you believe the deed was ambiguous. I think you stated no. Because it's my understanding based upon the case law, if it's ambiguous, then courts generally construe it to be tenants in common. And so you seem to be arguing that it's not ambiguous? Did I understand you to answer Justice Griffin's question that way? Well, my argument is that either if it's – whether or not it's ambiguous or not, you're stating the right – Don't say that that doesn't matter, because that does matter whether or not it's ambiguous. Because if it's not ambiguous, then we'll read the point language, and it says that it's joint tenancy. That's what the point language says, that it's joint tenancy. Now the question becomes, is it ambiguous? Because if it's ambiguous, courts throughout history have read it to be tenants in common when it's ambiguous. I understand the legal implication, Your Honor, of finding it ambiguous versus non-ambiguous. What I'm saying is I think when interpreting the four unities, the only way it could be construed is that the daughter and the son-in-law would hold a joint interest, because they're the only people there where the four unities, time, interest, et cetera, were not severed at the time of the sale. I'm sorry, the time of the deed was executed. So I agree it could be written better and – Did you write it? No, no, I didn't, which is one of the reasons I could make that comment. I just – and I'm going to ask Mr. King this, but a little bit – was the mortgage just – the borrower's just the husband and wife? Or was Annalee also on the mortgage? I'll ask you too, but yeah. Well, my understanding was that I didn't see that discussed in the record or attached to any of the pleadings, so I didn't – it would be the whore's record, so I didn't focus on it. No, no, no, that's okay. I just – this is more of a curiosity than an important – Right. I know subsequent to – if this would – I don't know if this would answer the question, but if it is ambiguous, and I could certainly see the argument that it's ambiguous, you have an agreement that's executed right after this trustee is executed stating that the estate is to get – I'm sorry, that Annalee is to get 50 percent – I'm sorry, $180,000 for sale of the property, and the remainder is to go to her daughter and son-in-law, which again suggests that they have two separate interests. That was the intention. So I agree with the purpose of interpreting these instruments is to give intent to what the parties wanted. If it's ambiguous, you have to look at parole evidence, and here the parole evidence and agreement executed right after the document. It wasn't a last-minute effort, you know, right before the death to try to get property that wasn't owed. It was right after the execution of the instrument states that there's two separate property interests here. It was like a month after, right? Right. I just think your argument is a stretch though because you want to find that it's not ambiguous and that the way it reads is that there was a tenancy in common established as to one person and then the other two have a joint tenancy amongst themselves, and that I think legally you're going to struggle. Well, I think you cannot have a joint tenancy between the three of them because it's impossible. It's like trying to say a circle is a square. You cannot have three parties that have different interests. I don't disagree with that. It's just that that's not your argument is that there is a tenancy in common as to the three of them with two people holding a joint tenancy and the other person is a tenant in common as to their joint tenancy. That's what you're arguing today, and legally you're going to struggle with that argument. Okay. Well, that's the only way to salvage this without looking at the real evidence. It's the only way to it. I don't think that's the only way we think. Okay. But that's fine. I'm sorry. I don't think that's the only way to resolve it. Okay. Well, it could be that the whole thing is just a tenant in common. They're all tenants in common. That's possible. And then if they're all tenants in common, then, yeah, you can have the ownership that you're speaking of. Right. And that's taking the view that it's an ambiguous drafting and you can't understand some of the terms. And I understand that argument. I'm not arguing against that. I'm just trying to argue an alternative. If you. Okay. I think I've used up 10 minutes. Can I actually more than 10 minutes, 15 minutes? Can I worry about your time? Just the pressure. Okay. I believe I've covered all of what I needed to cover based on your questioning. All right. Great. So what relief are you looking for? We're looking for a. Well, this is, as you know, is up here on a 304A. The case is not done. So we're looking to reverse and let the estate proceed with its partition action. So you want a reversal of the order? Correct. Finding that there was a joint tenancy between all three of them. Or. Right. And that's what you want. And then you want to remand the circuit court for further proceedings? Is that your request? Right. Or you could take the view that the. Well, I want to know the view you want to take. What's your. What relief do you want? Relief. The relief we want is that the estate in this case does indeed have a survivorship interest and that the partition action can proceed. Based on that conclusion. Thank you. Thank you. Thank you.  Counsel. My name is Peter King and I represent the appellee JP Morgan Chase Bank in this action. The issue today before this court is whether the estate lacks standing to bring its partition action. The circuit court properly determined that the estate lacked standing to bring its action because the estate had no interest in the subject property. I would like to briefly address the litigation history that went on. Real quick. Yes. The mortgage was it signed by all three? Just out of curiosity. No, that's OK. Your Honor. According to the record, Amelia Jasewski passed away in 2009. The Chase mortgage, I believe, was executed in 2013. And I know from reviewing the loan application, even though it's. I don't believe the loan application is part of the record. The loan application was made by Casey and Elizabeth. OK. Well, that makes sense then. She wouldn't have been. She had been dead for four years. Correct. OK, thank you. So the bank was operating under the assumption that those two owned the property in total. Correct. That no one else had an interest in the property. That's correct. Or estate. That's correct. OK. So just to briefly discuss the litigation history in this matter, the appellant's brief did address some of the history that went on, but there is some that was left out that I think is important for the court to consider in reaching this decision. In 2016, the estate filed its partition action, at which time Casey filed his motion to dismiss pursuant to 2619A, alleging that the estate had no standing. Now, if I can interrupt you, Your Honor. Please. But Casey didn't file a brief in this case, in their appeal. That's correct, Your Honor. OK. We just have two briefs. We have the appellant's brief and your brief, and there was no reply. That's correct, Your Honor. And just as a separate matter, I do believe any reference by the appellant's counsel to issues raised in my brief are inappropriate because counsel did not file a reply brief. Therefore, other than the justices asking indirect questions, I believe it's inappropriate, and the case law states it's inappropriate for counsel to address any of those issues without being requested to do so by the court. So after Casey filed his motion to dismiss, Chase joined. And the motion to dismiss, which I'll call the original motion to dismiss, was fully briefed and set for hearing. On the day of hearing, counsel for the estate, who is not counsel present in court today, this was a different counsel of the trial court, at hearing raised new issues, specifically the issues that bring us here today. The circuit court allowed the estate to put those issues in writing and to file an additional brief and then gave Chase and Casey an opportunity to respond the same. So by the time this hearing came about in November of 2016, this case was extensively briefed. And after hearing on the motion to dismiss, the court obviously granted the motion to dismiss, finding that the estate had no standing, included 304 language in the order, and that's what brings us here today. Again, the circuit court was correct in ruling that the estate lacked standing to bring its action because of the following reasons. One, the deed properly provides that Amelia held her undivided one-half interest, with Chase and Elizabeth's undivided one-half interest, as joint tenants and not tenants in common. Two, the language of the deed is unambiguous, and parole evidence is therefore improper. Do you agree with the proposition that in order for a joint tenancy to exist, the parties have to have equal interest, undivided equal interest? That is what the case law says, Your Honor. And it is Chase's position that the parties here indeed have two equal undivided interests. Well, but what if one of the, you know, hypothetically, one of the daughter or husband, what if one of them died? Their interest is absorbed by the surviving spouse, because they have together over 50% undivided one-half interest in the property. So Annalee got nothing in that case, in that instance. She would not get... Amelia. Amelia. I apologize for the interruption. No, I get easily lost, and I just wanted to make sure I understood your question. Amelia, sorry. Yes, in that case, the estate would remain the same. Had both the married individuals pre-deceased Amelia, then Amelia would take title as a joint tenant that the interest of the married couple, we'll call them Chase and Elizabeth, would transfer to Amelia by operation of law. But outside of the estates of either of the married individuals. But if Elizabeth died and Amelia was still alive, Amelia would own half and Casey would own half? Yes, 50% undivided one-half interest. Finally, even if the court finds that the language in this deed is ambiguous, the pro evidence offered by the estate at the trial court level in here is inappropriate and should not be considered. Now, touching on what counsel brought up regarding the report of proceedings from the November 28, 2016 hearing. There was a court reporter present who transcribed the hearing and then distributed the transcripts to the parties. However, no party to the case filed that transcript with the circuit court. So when the circuit court prepared the record on appeal, it did so without having the transcripts as part of the record. Now, during the pendency of this appeal, the estate attempted, I believe on more than one occasion, to supplement the record on appeal. And I believe it was given the opportunity to do so by this court. However, that opportunity was not taken. The transcripts from the 2016 hearing were not included, were not supplemented with the record on appeal, and therefore is outside the record of appeal in this matter. Any reliance in the estate's brief upon the actions that happened on November 28, 2016 are irrelevant for purposes of this brief because, again, they're outside the record. And for purposes of the appeal, it is the appellant's obligation to provide this court with a full and complete record on appeal. What part of their argument is relying on that transcript? They noted the court's representation that the law provided by the estate at the time was old property law. So, but more importantly, Your Honor, as the court noted in Fouch v. O'Brien, in the absence of such a record, it would be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Here, because the estate failed to file the record of proceedings, this court should presume that the order was entered by the trial court and was in conformity with the law and had a sufficient factual basis. Do you have a case for some sighted authority on a conveyance that can create a joint tenancy amongst three separate parties where two of them hold their interest in joint tenancy and the other one is sort of silent as to how the third party holds their interest? I cannot, Your Honor, and despite valiant efforts, no case appears to exist that reflects the actual situation that we're dealing with here. So does that lend itself to the notion that it's an ambiguous transfer?  Well, I'll say this. The language in the deed is clear and unambiguous because it transfers title to the parties as joint tenants and not tenants in common. Where does it say that Amelia is a joint tenant and that is a tenant in common with the other two? Well, there is no punctuation anywhere in there that would separate the interests of the two parties, such as a comma or a semicolon that would say 50% undivided one-half interest to Amelia, comma or semicolon, and an additional 50% undivided one-half interest to Casey and Elizabeth as joint tenants and not tenants in common. In order to read the deed as the estate would have this court to read the deed, either language or punctuation has to be added to that deed. Like I said, either a comma or a semicolon separating the interests of the parties or you would have to change the 50% undivided interest in Casey and Elizabeth to a 25%, 25%. Well, what about that an additional? Well, that's not, it says an undivided one-half interest to Amelia and an additional undivided one-half. It's kind of unusual language. Wouldn't you say the additional, the word additional? The word additional I don't believe adds any credence to the estate's position and therefore it is Casey's position that the deed is unambiguous and reflects a joint tenancy for 50% one-half interest to Amelia and a 50% undivided one-half interest to Casey and Elizabeth as joint tenants and not tenants in common. So you're taking the position that it's an unreasonable interpretation to say that the phrase as joint tenants and not as tenants in common, it's unreasonable to say that that applies only to the Jaworskis and it doesn't apply to the interest amongst all three of them, in between all three of them? It is Chase's position that the reasonable interpretation of this deed provides that Amelia is a joint tenant with Casey and Elizabeth. Yeah. My question is, is it unreasonable to say after reading this that the joint tenancy and not as tenant in common provision applies only to the husband and wife's relationship and doesn't apply to the decedent's relationship with the husband and wife? Is that an unreasonable position? With all due respect, Your Honor, I believe it is because, again, I think you would have to, the director of the document would have to separate the interests of the parties with some type of punctuation that would break these things apart. This is all one sentence without any punctuation that is dividing the interests of the parties. Okay. Thank you. The estate has no interest in the subject property. An inherent feature of joint tenancy is a right of survivorship. When one joint tenant dies, the interest of that joint tenant passes to the remaining joint tenant or joint tenants. Here, when Amelia passed away, her one-half undivided interest transferred to Casey Elizabeth without passing through the estate. It transferred as a matter of law upon her death. Therefore, any interest in the estate was never, I'm sorry, any interest in the subject property was never in the estate itself. Therefore, it lacks standing to bring the action. Joint tenancy in Illinois is also codified by statute. The Illinois Joint Tenancy Act, which is 765 ILCS 1005-0.01, and this act pursuant to the act, in order for parties to hold title as joint tenants, the act requires that titles passing to the parties not as tenants in common but as joint tenants. That essentially is the only requirement in the statute. Here, the deed expressly uses that joint tenancy language that is contemplated by the Joint Tenancy Act. For its argument in its opening brief, the estate asserts that in order for the parties to hold property as joint tenants, they must have equal rents in the property. The estate uses the interest here as 50% for Amelia, and this is, of course, before her death, and then 25% to Casey and 25% to Elizabeth. There is no language in the deed that sets forth such an ownership interest. Now, the case law provided by the estate, while correctly quoting the equal rents in the property provision, really provides no support for its position. The estate essentially relies upon three cases, Gaten v. Covanda, Inmate Condell, and Westerdale v. Grossman. Gaten involved a matter concerning the fraudulent transfer of property. The court there determined that the property was to revert to the state of title as in before the fraudulent transfer, and that state of title before the fraudulent transfer just so happened to be joint tenancy. Inmate Condell involved a marital property in the application of tenancy by the entirety. Tenancy by the entirety can only be held by a married couple to their marital residence. If that couple is to buy a subsequent piece of property and declare that subsequent piece of property their marital residence, the prior residence converts to joint tenancy. Again, not much help here. Westerdale v. Grossman involved a purported joint tenancy between three individuals, two of which had present interest in the property and one of which had a life estate with future interest. Thankfully, this case has nothing to do with future interest. So, again, there is very little that this case law does to support the estate's position. None of these cases provide any scenario similar to the scenario before this Court. Getting back to the joint tenancy statute. Yes. So you're saying that that statute basically did away with the four unities and all you need is those two words or three words and that's it? Well, according to statute, that is all that's required. It appears that the courts still do apply the four unities of interest. However, the courts have relapsed those. The original common law four unities have been relapsed. Well, the statute relapsed the one about taking title at the same time so that you didn't have to transfer to a secretary strongman. Sure. Yeah. Sure. But the courts determined that because the Act has loosened that part of the joint tenancy that courts should take a more liberal and practical approach to establish joint tenancies. What cases does that say? That is Sethoff v. Sutter. And it's provided in my brief run-out. I'm sorry. I'll get you a site. No, no. I got it here. Okay. Because I do have the case actually here before me. Thanks. Amongst many other things. Nevertheless, in this case, they really had equal rights to the property as did Casey and Elizabeth. Each had a right to an undivided one-half interest in the subject property, and therefore they shared equal rights. Now, addressing again the four unities which traditionally apply by Illinois courts, these unities are interest, time, title, and possession. There is only one unity that is raised by the estate, which is unity of interest. This is not unity of parties. It's unity of interest. In this case, the parties hold an equal undivided one-half interest in the subject property. There is a clear unity of interest in this case. Moreover, Illinois courts, again, have revoked the common law requirements, as previously discussed with this court. Chase admits that in light of the court's move to a liberal and practical view of joint tenancy, along with the fact that this deed meets all four unities from the common law, that the circuit court was correct to find that the parties held title as joint tenants. Moving along to parole evidence. Again, it is Chase's position that this deed is clear and unambiguous, vesting title to the parties as joint tenants. The language is clear and unambiguous. Parole evidence cannot be used to change its legal effect. Absent an ambiguity, the intention of the parties must be discerned from the language of the instrument. Here, there is no punctuation to qualify the parties' various interests. In fact, in order to read the deed, again, language must be added or punctuation must be added. Here, the joint tenancy language clearly applies to the entire conveyance, not just to Casey and Elizabeth. However, should this court determine that parole evidence is required in this instance, the parole evidence offered at the trial court, as well as in the opening brief, is inappropriate. The affidavit of Elizabeth is not based on personal knowledge, but is based on speculation. As indicated in her affidavit, she testifies to the intentions of Amelia and to Casey, as long as her own intention. That's improper. A witness cannot testify or give any representation as to what the interests of these other parties were. Moreover, this purported agreement, which was not contemporaneously made with the deed that was, in fact, executed a month later, provides no help to this court in interpreting the intentions of the parties. The only thing that this purported agreement addresses is a split of proceeds should the parties sell the property. There's not one word in that one-sentence agreement that has anything to do with title or intention and how the parties were to take title of the property. It's a simple disbursement of funds. So we would submit that this purported agreement does nothing to provide any basis upon which the deed was drafted. So in conclusion, yes. So your position would be that five people could own Blackacre, and two of them can hold joint tenancy to one-half interest, and the other three could hold joint tenancy to the other one-half interest. As long as the interests are equal, that is correct, undivided one-half and undivided one-half. That is our position. The problem is that joint tenancy generally implies that everybody has an equal share of the property, and that's not the case where you have two people that own one-half of Blackacre and three people that own the other half of Blackacre. There's not unity of interest there. They don't each own the same amount in the joint tenancy, and I think that's what I struggle with. I understand, Your Honor, but it's our position that those joint tenants to that ownership all own the same equal rights to each 50 percent interest, whether it is two or three parties. As long as they have equal ownership of that 50 percent, it's the unities, again, not the parties that are unified, but the interest is unified. And in that case, it is our position that it would be proper for joint tenancy. And I'm really big on the law being able to evolve. I think that there is an argument here, but you would have to basically rewrite the agreement. I think if the agreement said that Amelia owned an undivided one-half interest as a joint tenant in joint tenancy with Elizabeth and Casey who have another undivided one-half interest as joint tenants, I think that there may be some arguments that that could work, but that's not what this agreement says. I've just read words into the agreement. So I think it comes back to what I think Justice Pierce was asking earlier, or Justice Griffin, about whether or not it was ambiguous. And if it's ambiguous, courts have traditionally ruled that the entire property was owned as tenants in common, as you well know. And I think there is a way that this could have been written to make it more clear, but it's not written that way. And again, I'm not even sure that the example that I gave would necessarily create a joint tenancy. But again, I'm big on the law being able to evolve. I see that as a possibility. If you wanted to leave property to your two children who are alive and then their sister may have passed away and you want to leave property to her three children, that's where my example would come from. I mean, I don't think that's a reasonable argument. I mean, I think it's a reasonable argument because I think it's a reasonable argument that you, because you would not, of course, you would generally want your grandchildren to take per capita rather than per service, but of course you want your children to take per service. So I mean that's my – I could see that being an argument, but I'm not with you on this. Well, again, Your Honor, Chase's position is that if the intention of the drafter was to separate their interests, additional punctuation, additional language would be added. The fact that – But because that punctuation is not there, as the other two justices have stated, that's why it might be ambiguous. I would respectfully disagree. It is my position that because the language required by statute is there at the end, that qualifies the whole of the parties. So in conclusion, the circuit court correctly dismissed the estate's complaint with prejudice. There is a presumption that the ruling of the circuit court was in conformity with the law and had a sufficient factual basis. Eleanor Law allows the deed at issue to create a joint tenancy between Anelia Jaszewski and Casey and Elizabeth Tvorsky. And upon Anelia's death, Anelia's one-half undivided interest in the subject property transferred to Casey and Elizabeth by operation of law and outside of the estate. In sum, the estate has no interest in the subject property and therefore lacks standing to bring its partition action. Therefore, Chase respectfully requests that this Court enter an order affirming the decision of the circuit court. Thanks. Thank you all. Opposing counsel states that in order to adopt the position of the estate, you have to input language and punctuation into the closet issue. With all due respect, in order to adopt Chase's position, you have to suspend the laws of logic and mathematics because the estate has 50% and the remaining two parties have 50%. There's no way you can split those two parties in such a way that they can have the same percent interest as the estate. It's just math and the application, straightforward logic. They cannot be the same. As far as the case law, discussion of the case law is concerned, Chase tried to distinguish Gaten as well as the other cases I cited because the facts were not exactly the same. Gaten v. Covanda, which I cited, is a 1st District 2006 case and it cites the four unities and states very unequivocally that if you sever one of them, then so too is joint tenancy severed. It cites a Supreme Court case. This law has not changed. As one of the judges pointed out, the statute that was implemented was not intended to make it more attended for a more liberal interpretation of every one of the four unities. It was only intended to address instances at the time of the transaction and straw man arguments. So does that mean that if you have more than two people with an interest in property, you cannot have varying degrees of ownership in the property? In other words, if you had five people, one has 50% and the other four cut up the 50%, you cannot have a joint tenancy? Correct. If one person is given a percent that would make equal percent of the other remaining parties impossible, you cannot have a joint tenancy. And the case that supports that notion? The case that supports that notion would be the Gaten case that I just, the implication. Gaten v. Covanda, it's in my brief, and it just states the four unities and that if one of those don't exist, then joint tenancy is extinguished. One of the four pillars is, of course, interest here. There is not an equal interest between the three parties. I also embrace the notion of the law evolving, as you mentioned. I embrace public policy also that favors the general interest of society as well. And the public policy I would embrace here is that when parties come to an agreement, they have to understand what the terms they're using mean. They have to have, it has to have meaning. We can't have courts just arbitrarily redefine what well-defined terms in the law is. That would undermine the interests in the United States and Illinois constitutions for parties, that parties have the right to contract with one another. But that's counsel's argument. He says that according to the law as it stands today, the only thing that's required are those magic words, joint tenancy. And those magic words are there. That's not what the law is, though. The law is that you have to, as one of the judges pointed out, that four unities still have to exist for joint tenancy. And actually counsel played that out just a second ago when Judge Griffin was asking him questions. If, for example, Amelia died, then everything goes to the two people remaining. And then when one of them were, if one of them died, everything would go to that one person that's there. So the transfer of the interest is extremely clear there and that the unity is in that Amelia owns one half, the other two own one half as joint tenants. That's counsel's argument. And you said here today that you don't believe it's ambiguous. So if it's not ambiguous, that's the way the language could be read. So let me clarify so when you go back to your chambers you don't misunderstand my position. It's not that I think that the provision here is unambiguous. I'm saying if I'm arguing an alternative, if you think that this is not an ambiguous phrasation of a clause, if it's not unambiguous, then we still prevail because I do believe it's unambiguous. You believe it's unambiguous? I'm sorry. Ambiguous. I think it's ambiguous. I apologize. I'm getting tongue-tied. That's your first time telling us that. Every other time you've said to us it's not ambiguous. Well, I think I tried to argue on the alternative and it backfired, but my position is that it's ambiguous because, well, just applying logic, you could not apply it in a straightforward fashion the way that Chase wants to apply it because it doesn't allow for all three parties to have joint interests because of the specific language giving one party 50%, which by definition precludes the option of either of the other two parties having an equal interest. It's an inescapable conclusion. It is. Now, we have not found any authority that's on point, and you all have not cited any authority that would be on point to this issue. So are you aware of anything that you perhaps have not cited? Because we've not found anything that's on point, and we've also researched the issue. I suppose I don't – well, first of all, if it's not on – if there is no case law on point, doesn't that just reinforce the notion that it's an ambiguous provision? But secondly, I think – I suppose the notion that you have to have equal interests, to me, is not – I don't understand why that would not be clear. Equal interests, they do not have equal interests. So as I said in the beginning of my rebuttal, unless you suspend what language means and how logic is applied, they cannot have equal interests. If the State had 50 percent and the other two had some combination of 50 that's not specified, there's no way they can have equal interests. It is specified. They each have 25 percent. They have 50 percent of the 50 percent. That would be counsel's argument that it is specified. Actually, no. The language does not say 25-25. It just says that they are to share. We don't know the distribution. Well, another way to look at it is under this deed, Amelia has 50 percent. The husband and wife have 50 percent, but really they have 25 between the two of them. And if Casey dies, now his wife has 50 percent with her mother. Whereas if Amelia dies, her 50 percent goes to the other two as 100 percent. So it's an unequal shift because if Casey dies, Amelia's interest never changes. But her daughter's gets increased by 25 percent in that event. So that's not an equal transfer upon the death of one of them. Whereas if you have a straight joint tenancy, somebody dies, the remaining parties survive to that interest equally. So you can't just say, well, you know, there's a 50 percent difference, and there's a 50 percent difference. I know I'm not going to be able to prove that to yet. Right. To get to that point, though, that you have to presume you have to treat two people as one. As you said, you have to treat that couple as one person rather than two to get there. And I guess. Mr. Pierce just gave me your argument, and you missed it. Well, I'm not giving you an argument. It's just it seems like that's what you're saying to me. I could be misinterpreting what you're saying. Right. I was just addressing the notion that a married couple could share an interest with one person equally. Finally, I just wanted to address the issue of the record. I did upload it. It was it was filed. It was my understanding it was denied. That's what the clerk's office told me. So I did attempt to upload the supplemental record, and it was my understanding all along that it had been uploaded. I was told by the clerk's office over on district court, circuit court's clerk's office, that they had not uploaded it prior to what I had been told previously. So that's why it was uploaded late. And I did file it here, and I'm understanding that it was denied. So opposing counsel's representations are not accurate on that count. Nothing about and finally opposing counsel mentioned nothing about title is discussed in the agreement. What's at issue here is getting some sort of inference from that document as to what the interest of each party was. And that document states that one party was to get a set sum of money upon a sale with the remainder to go to the rest. By that document, I'm referring to the agreement that was executed after about a month later after the original trust. And it says upon sale of the property, $180,000 is to go to Amelia, and then what's left over is to go to Casey and Elizabeth. So what's important about that is that it represents some indicia as to what the intention of this instrument was, which was to treat this, treat the property as different interests, which supports the estate's position. If there's any other questions. Okay. Thank you very much. We'll take it under advisement. Thank you. Appreciate your work. Thanks.